UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JESUS MANSO,                                        :
                                                    :
            Plaintiff,                              :           **MEMORANDUM**
                                                    :           **AND ORDER**
            -against-                               :
                                                    :           04 Civ. 10276 (LBS)
SANTAMARINA & ASSOCIATES and                        :
GILBERT SANTAMARINA,                                :
                                                    :
            Defendants.                             :
-------------------------------------------------------------X

SAND, District Judge.

        Plaintiff Jesus Manso ("Plaintiff" or "Manso") brings this action against the law firm of

Santamarina & Associates and individual attorney Gilbert (or Gil[1]) Santamarina (collectively

"Defendants"), asserting violations of the federal Fair Credit Reporting Act, 15 U.S.C. § 1681 et

seq. ("FCRA"); the New York Fair Credit Reporting Act, N.Y. Gen. Bus. Law § 380 et seq.

("NYFCRA"); and the Driver's Privacy Protection Act, 18 U.S.C. § 2721 et seq. ("DPPA").

Manso alleges that Defendants violated various portions of the FCRA, NYFRCA and DPPA by

utilizing a consumer reporting agency to obtain certain information pertaining to him from the

New York State Department of Motor Vehicles ("DMV"),[2] acting under false pretenses in the

process, and then including that information in a pleading filed in a New York City housing

court proceeding without protective seal.

        Defendants have moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure to dismiss the complaint for failure to state a claim upon which relief can be granted.

---

[1] Mr. Santamarina avers that he is actually "Gil Santamarina" and has been "incorrectly sued as 'Gilbert Santamarina'." (Pet'r Affirmation in Supp. of Mot. to Dismiss ¶ 1.) Neither he nor Plaintiff suggests that this mistake should have any substantive consequences.

[2] Manso's allegation that the entity through which the information was obtained was a consumer reporting agency for purposes of the FCRA is conclusory, but the question whether more detail was required in this respect need not be addressed given the other, more fundamental problems with the Complaint.

For the reasons stated below, this motion is granted with respect to Plaintiff's claims under the DPPA and the FCRA, and the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

## I. Legal Standard

A motion to dismiss for failure to state a claim pursuant to Fed R. Civ. Pro. 12(b)(6) should be granted "if, accepting all the allegations in the complaint as true and drawing all reasonable inferences in plaintiff's favor, the complaint fails to allege any set of facts that would entitle plaintiff to relief." Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 89-90 (2d Cir. 2004); Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc., 343 F.3d 189, 194 (2d Cir. 2003). "The task of the court in ruling on a Rule 12(b)(6) motion 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998) (quoting Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984)). "While the pleading standard is a liberal one," however, "bald assertions and conclusions of law will not suffice." Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996).

In evaluating the allegations of a complaint on a motion to dismiss, a court may also consider "documents attached to the complaint as an exhibit or incorporated in it by reference... matters of which judicial notice may be taken, or... documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993). Particularly relevant here, "courts routinely take judicial notice of documents filed in other courts... to establish the fact of such litigation and related filings." Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir. 1991).

Both Plaintiff and Defendants have submitted copies of various filings in the New York litigation with respect to which the complained-of acts allegedly occurred, <u>Spanish Benevolent Society, Inc. v. Manso</u>, Index No. L&T 69264/04 (N.Y. Civ. Ct. 2004). Although the parties have not submitted copies of all of the same filings, neither side disputes the authenticity of the copies introduced by the other. Therefore, the Court will consider the submitted Housing Court filings in ruling on this motion to dismiss, on the ground that they represent matters of which judicial notice may be taken. The Housing Court filings could perhaps also be considered documents incorporated in the complaint by reference, as Defendants argue, but considering them as subject to judicial notice eliminates the necessity of determining whether this designation would apply to each and every filing submitted by either side.

## II. Background

Reading the allegations of the Complaint in conjunction with the Housing Court filings submitted by the parties produces the following relevant facts to be assumed for purposes of this motion. At all relevant times, Manso resided at 239 W. 14th St., Apt. #10, New York, NY. Beginning in May 2004, this apartment was the subject of a holdover petition, filed in Housing Part F of the Civil Court of the City of New York (referred to by the parties as New York "Housing Court"). The petition was filed by Petitioner-Landlord Spanish Benevolent Society, Inc. against Manso as Respondent-Tenant. Santamarina & Associates served as counsel for the Spanish Benevolent Society; Manso was represented by Fishman & Neil, the same firm that serves as his counsel in this federal action.

On June 15, 2004, Manso filed a motion in the Civil Court action seeking, among other relief, summary judgment dismissing the petition with prejudice. In support of his application for summary judgment, Manso offered an affidavit. The first numbered averment in this

affidavit included the statement "I reside at 239 West 14th Street Apt. 10 New York NY (the 'subject premises')." (Def. Affirmation in Supp. of Mot. to Dismiss, Ex. C.) The third numbered averment in this affidavit included the statement "I have resided in the subject premises since February 1, 2004, as my primary residence, at a monthly rent of $600.00." (Id.)

On or about June 22, 2004, Defendants requested and received a report from KLM Search Services ("KLM"), a "consumer reporting agency" (Compl. ¶ 9), that contained information regarding Plaintiff. This report (the "KLM Report" or "Report"), which KLM had obtained for Defendants from the DMV, was titled "Driver Record – New York State." (Def. Affirmation in Supp. of Mot. to Dismiss, Ex. E; Pl. Dec. in Opp'n to Def. Mot., Ex. 3.) It comprised two distinct portions containing different sorts of information. The first portion included Plaintiff's "name, address, date of birth, height, gender, eye color, New York State Motor Vehicle Identification Number, restrictive lens status, license class, license status and license expiration date." (Compl. ¶ 10.) The address given in this portion differed significantly from the address sworn to by Plaintiff in the affidavit that had accompanied his June 15 motion. The second portion detailed an accident prevention course that Plaintiff had undergone, and his convictions for speeding and driving without a seat belt.[3]

In accessing, obtaining and using the information contained in the KLM Report, "the defendants expressly or impliedly advised KLM that they had a 'permissible purpose' for doing so." (Compl. ¶¶ 15-16.) They did not, Plaintiff alleges, actually have such a permissible purpose. Rather, "[i]n accessing, obtaining and using such information, the defendant[s] acted knowingly and willfully and under false pretenses." (Compl. ¶ 17.)

---

[3] The Report shows convictions for "NO SEAT BELT DRIVER" and "SPEED IN ZONE" for which Plaintiff was penalized by fines of $40 and $60 respectively.

Having obtained the KLM Report, the Defendants attached it to a Notice of Cross-Motion that they filed on behalf of the petitioner Spanish Benevolent Society in the Civil Court action. They did so "as part of an effort to establish that the plaintiff did not primarily reside at his home located at 239 West 14th Street Apt. 10 New York, NY." (Compl. ¶ 19.) This effort was made despite the fact that under what Plaintiff asserts to be the correct interpretation of New York law, "[t]he plaintiff's primary residence at that location had no bearing on, or relevance to, the issues before the New York City Housing Court in the Housing Court case" (Compl. ¶ 20), and neither did the other information contained in the KLM Report have any such relevance.

Plaintiff's attorney wrote to Defendants shortly after the cross-motion was filed and served. He "advised [them] that [in his view] [their] use and publication of the report violated the DPPA and the FRCA and requested that they take steps to mitigate the plaintiff's harm by retracting the report from the Court file." (Compl. ¶ 23.) Defendants refused to withdraw the KLM Report (or at least attempt to withdraw it), leaving the report available to the public.

Plaintiff, by his same attorney, brought this action several months later. The claims that he attempts to state in it make up three conceptually distinct groups, which will be addressed in turn: claims under the DPPA, claims under the FCRA, and claims under New York State law.

## III. Driver's Privacy Protection Act

It is convenient to address Plaintiff's claim under the Driver's Privacy Protection Act first, both because it is the simplest to dispose of and because Plaintiff asserts that the DPPA claim covers the first portion of the KLM Report. Plaintiff asserts that he has stated a cause of action for the obtaining, use and disclosure of the first portion of the KLM Report under 18 U.S.C. § 2724(a), which provides that "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter

shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court." 18 U.S.C.S. § 2724(a) (2005).

The first portion of the KLM Report (although not the second portion) does qualify as "personal information" under the DPPA. According to the definitions section of the DPPA, "'personal information' means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." 18 U.S.C.S. § 2725(3). The first portion of the KLM Report includes Plaintiff's name, address, and driver identification number, as well as some "disability information" in the form of a notation regarding the requirement that he wear corrective lenses.

Plaintiff also sufficiently alleges that the information in the first portion of the KLM Report (as well as the information in the second portion) was from a "motor vehicle record." That term is defined under the DPPA as "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles," 18 U.S.C.S. § 2725(1), and it is certainly a reasonable inference from the facts pled that the information in the KLM Report was obtained from a record pertaining to Plaintiff's license to operate a motor vehicle. The only remaining element of a cause of action under § 2724 is that the information be obtained or used "for a purpose not permitted under this chapter," 18 U.S.C.S. § 2724(a).

With respect to this last element, however, Plaintiff's complaint fails to state a claim. One permitted purpose for which the DPPA allows information from a motor vehicle record to be disclosed is "[f]or use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body,

including the service of process, investigation in anticipation of litigation, and the execution or enforcement of judgments and orders." 18 U.S.C.S. § 2721(b)(4). According to the Complaint, "the Defendants attached the report to [the] papers filed in the Housing Court case as part of an effort to establish that the plaintiff did not primarily reside at his home located at 239 West 14th Street Apt. 10 New York, NY." (Compl. ¶ 19.) This was a "use in connection with [a] civil... proceeding in [a]... State[] or local court," 18 U.S.C.S. § 2721(b)(4).

Plaintiff's allegation that the location of his primary residence lacked relevance to the issues before the Housing Court does not suffice to save his claim. Even if Plaintiff is correct as a matter of New York State law that his primary residence, as such, should not ultimately have been relevant to the merits of the question before the Housing Court, it is nevertheless the case that he swore in an affidavit submitted with his Housing Court motion that 239 West 14th Street Apt. 10 was his primary residence. It was only after the submission of this affidavit that Defendants sought and obtained the KLM Report. Defendants' effort to refute Plaintiff's sworn statement regarding his primary residence, so as to demonstrate that Plaintiff had sworn to an untruth in the course of the Housing Court litigation, was a use in connection with that litigation.

In support of his argument that Defendants cannot rely on the "litigation exception" contained in 18 U.S.C. § 2721(b)(4), Plaintiff cites Cowan v. Ernest Codelia, P.C., 149 F. Supp. 2d 67 (S.D.N.Y. 2001), and Pichler v. UNITE, 339 F. Supp. 2d 665 (E.D. Pa. 2004), and argues that "the party obtaining information from the DMV must use it reasonably in relation to the focus of the litigation." (Pl. Mem. in Opp'n to Defs. Mot. to Dismiss at 18.) Use of information during a litigation in a manner not reasonably related to that litigation might indeed give rise to the inference that the information was not actually obtained and used "in connection with" that litigation, as § 2721(b)(4) requires, but that the litigation was instead merely a pretext for an action taken for some other purpose. See Cowan, 149 F. Supp. 2d at 79. Such an inference is

not applicable here, however, and both <u>Cowan</u> and <u>Pichler</u> are readily distinguishable from this case.

In <u>Cowan</u>, an attorney at the defendant law firm, William Tauber, acquired from DMV records the address of plaintiff Robin Cowan, the Assistant District Attorney ("ADA") who had cross-examined him when he served as a witness at the suppression hearing in a murder case. He then used this address, which was not publicly listed, to mail an empty envelope to Ms. Cowan. 149 F. Supp. 2d at 71-72. When Ms. Cowan called Tauber to ascertain if he had sent her the empty envelope, Tauber allegedly "advised Ms. Cowan that he wanted to determine if Ms. Cowan really lived in New York City and... also indicated he had done so to 'pay her back' for having vigorously cross-examined Tauber when he testified at the suppression hearing in the [murder] case." 149 F. Supp. 2d at 72. The <u>Cowan</u> defendants conceded that the envelope had been mailed based on information obtained from a search of DMV records, but "contend[ed] that Tauber caused the search to be made to confirm whether or not Robin Cowan was a bona fide resident of the City of New York," an issue that they asserted was relevant because "N.Y. Public Officers Law § 3 requires that Bronx ADAs reside within the City of New York and... in the absence of compliance with that law, an ADA is not qualified to serve and may be removed." <u>Id.</u> The defendants' motion for summary judgment was denied on the ground that "a reasonable juror could find that the DMV searches and the subsequent sending of the envelope to Ms. Cowan's residence was not for use in connection with a criminal proceeding but rather was to threaten or harass her for personal reasons." <u>Id.</u> at 79.

In this case, unlike <u>Cowan</u>, the complaint itself alleges that the defendants obtained and used DMV information "as part of an effort to establish" a point in the litigation. (Compl. ¶ 19.) That the point Defendants wished to establish may have been relevant only peripherally, as bearing on the respondent-affiant's willingness to swear falsely, does not transform an effort to

8

establish that point into an effort to threaten or harass for personal reasons, or to accomplish some other impermissible personal purpose. Submission of information to a court in an effort to prove false swearing by an adversary is not at all analogous to the "private, allegedly vindictive use of the information to threaten opposing counsel" that Cowan held "would not be a 'use' in connection with a [pending] case," 149 F. Supp. 2d at 79.

Pichler, as well, involved a use of information that was too conceptually distant from any pending case to qualify as being "in connection" with one. The Pichler plaintiffs alleged that the defendant unions, during an attempt to organize the employees of Cintas Corporation, had obtained their home addresses from motor vehicle records after writing down license plate numbers of cars parked outside a Cintas facility, and had used this information to contact them at home. The unions asserted that because "the complaint alleges that they obtained the plaintiffs' personal information as part of a union organizing effort, activity protected under the National Labor Relations Act," they were protected by the litigation exception to the DPPA. 339 F. Supp. 2d at 667. Although "the complaint never identifie[d] any proceeding in which the Unions might use this information," the defendant unions requested that the court "take judicial notice of the many NLRB proceedings involving their efforts to organize Cintas workers." Id. Noting that the parties had not provided copies of "the papers filed with the NLRB," and that even if they had done so the court would not undertake "extensive review of th[ose] papers" at the motion to dismiss stage, the court in Pichler determined that it "[could ]not grant the motion to dismiss on the grounds of the litigation exception because the complaint does not establish that the exception applies here." Id. at 667-68.

Unlike Pichler, in this case copies of the relevant filed papers have been provided, and an extensive review of them is not required in order to determine that the litigation exception applies. A brief review of the affidavit filed by Manso in the New York action – a review clearly

permitted under <u>Brass v. American Film Technologies, Inc.</u>, 987 F.2d 142, 150 (2d Cir. 1993),

and <u>Kramer v. Time Warner, Inc.</u>, 937 F.2d 767, 774 (2d Cir. 1991), <u>see</u> <u>supra</u> Part I – is

sufficient to make it quite clear that the litigation exception applies.  Even the Complaint itself,

read in isolation without the publicly filed documents that it likely incorporates by reference,

establishes that the litigation exception applies.  The Complaint alleges that "the defendants

attached the [KLM] report to its [sic] papers filed in the Housing Court case as part of an effort

to establish that the plaintiff did not primarily reside at his home located at 239 West 14th Street

Apt. 10 New York, NY."  (Compl. ¶ 19.)  It thus identifies a specific proceeding, in the course of

which Defendants submitted the report in "an effort to establish" a particular point.  These facts

alleged by the Complaint itself distinguish this case from <u>Pichler</u>, where no proceeding in

connection with which the driver's-record information could have been used was even identified.

The holding of <u>Pichler</u> therefore does not support Plaintiff's position.

    The dictum from <u>Pichler</u> that is quoted in Plaintiff's Memorandum of Law also does not

support Plaintiff's position.  In "digress[ing]" to explain how the litigation exception would be

interpreted if the defendants could establish at a later stage of the case that a relevant proceeding

existed, <u>Pichler</u> interpreted the word "use" in § 2721(b)(4) to "impl[y] a reasonable likelihood

that the decision maker would find the information useful in the course of the proceeding."  339

F. Supp. 2d at 668.  Assuming for the sake of argument that this is the correct standard,

Defendants have satisfied it, regardless of whether the location of Plaintiff's primary residence

was ultimately relevant to the outcome of the Housing Court proceeding on a proper

interpretation of New York law.  This Court takes judicial notice of the fact that it, and many

other courts, would find useful the information that a party and affiant had sworn incorrectly or

falsely with respect to a fact that would have been peculiarly within his personal knowledge

(such as his primary residence).  Whether or not information indicating that Plaintiff's residence

was not at 239 West 14th Street would have been "useful" information under the Pichler standard before he swore that his primary residence was at that location, it became so afterward. Thus, Plaintiff's DPPA claim must fail.

## IV.  Federal Fair Credit Reporting Act

Plaintiff contends that the second portion of the KLM Report, containing information on his convictions for speeding and driving without a seat belt and on an accident prevention course that he completed, was protected by the federal Fair Credit Reporting Act.  He asserts that Defendants violated 15 U.S.C. § 1681b by obtaining and using this portion of the KLM Report without a purpose permissible under the FCRA, and violated 15 U.S.C. § 1681q by obtaining this portion of the report under false pretenses.  These two sections will be addressed in turn.

### A.  15 U.S.C. § 1681b

Plaintiff's first and second causes of action allege violations of 15 U.S.C. § 1681b. According to subsection (f) of that section,

> A person shall not use or obtain a consumer report for any purpose unless--
>    (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and
>    (2) the purpose is certified in accordance with [15 U.S.C. § 1681e] by a prospective user of the report through a general or specific certification.

15 U.S.C.S. § 1681b(f) (2005).  A cause of action for intentional violation of any FCRA requirement is provided by 15 U.S.C. § 1681n, and a cause of action for negligent violation of any FCRA requirement is provided by 15 U.S.C. § 1681o.  Plaintiff makes claims under both § 1681n and § 1681o, for negligent and intentional violations of § 1681b(f).

Both claims based on § 1681b(f) must fail, for identical reasons.  Assuming that the second portion of the KLM Report qualified as a "consumer report" at all – which is itself

doubtful – the purpose for which the KLM Report is alleged to have been obtained was an authorized one under § 1681b, meaning that no violation of § 1681b(f)(1) occurred. It is not alleged that Defendants failed to certify this authorized purpose pursuant to § 1681b(f)(2), so Plaintiff's claims under § 1681n and § 1681o for violations of § 1681b necessarily rely solely on § 1681b(f)(1), and Defendants' compliance with § 1681b(f)(1) is thus fatal to Plaintiff's first and second causes of action.

### 1. Definition of a Consumer Report

In order for § 1681b(f) to apply, what was used or obtained must be a "consumer report" as that term is defined under the FCRA. According to 15 U.S.C. § 1681a(d)(1),

> The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness,[4] credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for--
>     (A) credit or insurance to be used primarily for personal, family, or household purposes;
>     (B) employment purposes; or
>     (C) any other purpose authorized under [15 U.S.C. § 1681b].

15 U.S.C.A. § 1681a(d)(1) (2005). Certain communications that would otherwise be consumer reports under this definition are excluded from that category by 15 U.S.C. § 1681a(d)(2), but for the purposes of this case the primary definition is sufficient.

It is doubtful whether any portion of the KLM Report qualifies as a "consumer report" in such a way as to make possible a § 1681b(f)(1) claim, for two reasons. First, the information contained in the KLM Report appears not to have been information "bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal

---

[4] The United States Code Annotated notes that while "credit worthiness" appears in the original statute, this "[p]robably should be creditworthiness". 15 U.S.C.A. § 1681a at n.1 (2005).

characteristics, or mode of living" within the meaning of the statute.   Second, Plaintiff has not

sufficiently pled that the KLM Report was "expected to be used or collected in whole or in part"

for any of the purposes enumerated in § 1681a(d)(1), has not pled that the Report was actually

used for one of the purposes listed in § 1681a(d)(1)(A)-(B), and cannot base a § 1681b(f)(1)

claim for acquisition of a consumer report without an authorized purpose on the proposition that

the Report was a consumer report under § 1681a(d)(1)(C) by virtue of actually being "used" for

an authorized purpose enumerated in § 1681b.


### a.  Information Bearing on Credit Worthiness, Character, Etc.

Plaintiff asserts that because it contains "details about the plaintiff's convictions for

various motor vehicle offenses and the penalties that were imposed," the KLM Report (or rather

the second portion of it) "plainly pertains to the plaintiff's 'character, general reputation and

personal characteristics."  (Pl. Mem. in Opp'n. to Defs. Mot. to Dismiss at 12.)  Given the nature

of the "convictions" and "penalties" at issue, however, this is not nearly so plain as Plaintiff

contends.  Neither speeding nor driving without a seatbelt is an offense that would commonly be

described as reflecting upon one's moral character or reputation.  And while "personal

characteristics" is admittedly a rather vague term that could be read broadly, the authorities cited

by Plaintiff with regard to its proper definition suggest that it describes issues of similar

magnitude to character and reputation.

Plaintiff quotes the Federal Trade Commission (FTC) Official Commentary on the

FCRA, 16 C.F.R. 600 App. at § 603(c)(4)(C) (2005), for the proposition that "motor vehicle

reports 'are consumer reports when they are sold by a Department of Motor Vehicles for

insurance underwriting purposes and contain information bearing on the consumer's 'personal

characteristics,' such as arrest information.'"  (Pl. Mem. in Opp'n to Defs. Mot. to Dismiss at 12-

13.)  Notwithstanding <u>Atwater v. City of Lago Vista</u>, 532 U.S. 318, 323 (2001) (holding that the Constitution does not "forbid[] a warrantless arrest for a minor criminal offense, such as a misdemeanor seatbelt violation punishable only by a fine"), a record stating that one was fined $60 and $40 respectively for speeding and driving without a seatbelt is not the same thing as "arrest information."  There is no indication in the KLM Report that Plaintiff was arrested for any offense, or otherwise treated in a manner that would indicate suspicion of conduct warranting an analogous level of societal disapproval.

Plaintiff also cites <u>Porter v. Talbot Perkins Children's Services</u>, 355 F. Supp. 174, 177 (S.D.N.Y. 1973), which quotes FTC commentary on the FCRA that even more strongly indicates "personal characteristics" to concern items of greater significance than those involved here.  The commentary quoted in <u>Porter</u> is as follows:

> It is quite common for certain businesses such as insurance companies to request reports on a prospective (or current) insured from various State Departments of Motor Vehicles. These reports are sold to such companies and generally reveal a consumer's entire driving record, including arrests for speeding, drunk driving, involuntary manslaughter, etc.
>
> It is the Commission's view that, under the circumstances in which such a State motor vehicle report contains information which bears on the 'personal characteristics' of the consumer (i.e., when the report refers to an arrest for drunk driving), such reports sold by a Department of Motor Vehicles are 'consumer reports' and the agency is a 'consumer reporting agency' when it sells such reports.

355 F. Supp. at 177 (quoting 4 CCH Consumer Credit Guide ¶ 11,354 (1971)).  This suggests that a motor vehicle report is a "consumer report" bearing on "personal characteristics" only in cases such as those "when the report refers to an arrest for drunk driving," as opposed to those in which a report refers to a less serious offense such as "speeding."  While the implication that the FTC in 1971 contemplated the possibility of "arrests for speeding" might weigh in favor of an interpretation of the modern FTC Commentary as including speeding convictions within the concept of an "arrest record" that is said to bear on "personal characteristics," <u>see</u> 16 C.F.R. 600

App. at § 603(c)(4)(C), the <u>Porter</u> quotation on balance cuts against the notion that a record of convictions for speeding and driving without a seatbelt is information "bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living," 15 U.S.C.A. § 1681a(d)(1) .

### b.  Use, Expected Use, or Collection for an Enumerated Purpose

Whether or not the information in the KLM Report was information bearing on Manso's "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living," it could only have been a "consumer report" as that term is defined in § 1681a if it were "used or expected to be used or collected in whole or in part for" any of the purposes enumerated in § 1681a(d)(1).  15 U.S.C.S. § 1681a(d)(1) (2005).  The Complaint does not clearly allege that the KLM Report was "expected to be used or collected" for an enumerated purpose; the Complaint certainly does not allege that the KLM Report was actually used for a credit, insurance or employment purpose covered by § 1681a(d)(1)(A)-(B); and the Complaint must necessarily rely on the theory that the Report was not actually used for a purpose authorized by § 1681b and thus covered by § 1681a(d)(1)(C).

In analyzing the purposes for which the KLM Report was "used or expected to be used or collected," 15 U.S.C.S. § 1681a(d)(1), it is important to note that the Complaint alleges the information contained in the Report to have been "obtained by KLM on the defendants' behalf from the DMV."  (Compl. ¶ 12.)  That is, KLM is alleged to have acted in effect as Defendants' agent, to have served as a mere conduit by way of which Defendants acquired the information contained in the KLM Report from the DMV.  Therefore, the only purposes for which KLM can be said to have collected the information contained in the Report, besides the obvious purpose of selling the Report to the Defendants, would be purposes attributable to the Defendants and thus

to KLM on an agency theory. And the only purposes for which KLM can be said to have expected the information in the Report to be used are those purposes for which it expected Defendants themselves to use the Report.

The KLM Report differs significantly in this sense from the sort of credit report that would typically be subject to the FCRA. When a credit reporting agency obtains data from many different sources in order to distribute it to many different clients, the information in its files has been collected for purposes beyond those of any particular single client. See, e.g., Trans Union Corp. v. FTC, 221 F.3d 228, 229 (D.C. Cir. 1996) ("Trans Union is a consumer reporting agency that collects and resells data about the credit and payment patterns of over a hundred million Americans. Typical buyers of this information are firms considering extending some kind of credit to the consumers about whom they inquire."). In such a case,

> even if a report is used or expected to be used for a non-consumer purpose, it may still fall within the definition of a consumer report if it contains information that was originally collected by a consumer reporting agency with the expectation that it would be used for a consumer purpose.

Ippolito v. WNS, Inc., 864 F.2d 440, 453 (7th Cir. 1988); accord Boothe v. T.R.W. Credit Data, 523 F. Supp. 631, 634 (S.D.N.Y. 1981) ("if the report was collected for one of the purposes listed in section 1681a(d), it is a consumer report, regardless of the reason for which it is subsequently disseminated."). In Ali v. Vikar Management Ltd., 994 F. Supp. 492 (S.D.N.Y. 1998), frequently cited by Plaintiff, the report at issue was a "credit report," 994 F. Supp. at 495, and the statement that "[t]he purpose for which the report is ultimately used is not relevant to the question of whether the report is a 'consumer report'," 994 F. Supp. at 497, was made in this context. Here, as the Complaint describes KLM's role, there can be no such distinction between expected purposes during collection and the ultimate actual and expected use—or at least there can be no such distinction with respect to *KLM's* collection of the data contained in the Report.

The DMV's collection of that same data can be ignored for these purposes since the DMV is not alleged to be a "consumer reporting agency" as that term is defined in the FCRA, and nothing else is alleged regarding the purposes for which it collected the data ultimately contained in the KLM Report.

Of the three ways in which a purported consumer report can ordinarily meet the definitional requirement that it be "used or expected to be used or collected in whole or in part" for a § 1681a enumerated purpose, therefore, it is apparent that two are unavailable to Plaintiff. The theory of the Complaint is necessarily that Defendants did not use the KLM Report for a purpose authorized in § 1681b and thus covered by § 1681a(d)(1)(C), since if they had done so there could be no claim under § 1681b(f)(1); the Defendants are also not alleged to have used the KLM Report as "a factor in establishing the consumer's eligibility for... credit or insurance to be used primarily for personal, family, or household purposes... [or for] employment purposes," 15 U.S.C.S. § 1681a(d)(1)(A)-(B), so actual use for a purpose enumerated in § 1681a(d)(1) is not at issue. The information in the KLM Report was, as explained above, not collected for a purpose distinct from that for which the Report was ultimately used or expected to be used, so collection for a purpose enumerated in § 1681a(d)(1) cannot be an independent ground on which to declare the KLM Report a consumer report. Thus, the only way that the KLM Report or any portion of it could be a "consumer report" capable of giving rise to a § 1681b(f)(1) claim is if the KLM Report itself was *expected* to be used for a § 1681a(d)(1) enumerated purpose, such as a purpose authorized in § 1681b and thus covered by § 1681a(d)(1)(C). "If a consumer reporting agency provides a report based on the expectation that the report will be used for purposes permitted by the FCRA, then the report is a 'consumer report' under the FCRA." Popik v. Amer. Int'l Mortgage Co., 936 F. Supp. 173, 176 (S.D.N.Y. 1996); accord Heath v. Credit Bureau of Sheridan, Inc., 618 F.2d 693, 696 (10th Cir. 1980).

Plaintiff does allege that "in accessing, obtaining and using [the second portion of the KLM Report], the defendants expressly or impliedly advised KLM that they had a 'permissible purpose' for doing so." (Compl. ¶ 15.) As the phrase quoted in that paragraph of the Complaint is not drawn from the language of the FCRA or otherwise defined,[5] however, the most reasonable interpretation of the paragraph is that it alleges Defendants advised KLM that they were accessing and using all portions of the KLM Report for some legally permissible purpose (as opposed to an illegal purpose). If the KLM Report were a credit report, and if Defendants lacked an FCRA-authorized purpose for accessing and using it, then the representation of permissible purpose alleged in paragraph 15 of the Complaint could have been a false statement violative of 15 U.S.C. § 1681q, under which Plaintiff also attempts to state a claim, see infra Part IV.B. But to rely on paragraph 15 for the proposition that the KLM Report was a credit report in the first instance, on the theory that KLM expected the Report to be used for a purpose enumerated in the FCRA because Defendants specifically claimed that they intended to use it for such a purpose, would be to read the allegation too broadly.

A narrower reading of the Complaint in this respect is consistent with Plaintiff's argument in his Memorandum of Law that "the defendant could **only** have obtained the information from KLM by alleging that it intended to use it for insurance underwriting, or some other permissible purpose under § 1681b, since that is the only procedure for which it could have lawfully obtained the report." (Pl. Mem. in Opp'n to Defs. Mot. to Dismiss at 18 [emphasis in original].) Plaintiff in effect assumes that the KLM Report would have been a consumer report regardless of the purpose for which it was requested or actually used, and concludes that

---

[5] The quoted phrase may have been taken from <u>Ali v. Vikar Management Ltd.</u>, 994 F. Supp. at 497. <u>Ali</u> not having been cited in the Complaint (as cases generally are not cited in complaints), however, the Defendants could have been expected to infer that the intended meaning of 'permissible purpose' was the precise meaning used in <u>Ali</u>, and the purpose of a complaint is to "provide the defendant with 'fair notice of what the plaintiff's claim is and the grounds upon which it rests,'" <u>Dura Pharmaceuticals, Inc. v. Broudo</u>, No. 03-932, slip op. at 9 (U.S. Apr. 19, 2005) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)), <u>see infra</u>.

Defendants <u>must</u> have asserted their purpose in requesting it to be one enumerated in the FCRA, because only such a purpose would render the acquisition of a consumer report permissible. Given the Court's holding that the KLM Report would only have been a consumer report in the first place if KLM had expected it to be used for an enumerated purpose or if it had actually been used for an authorized purpose, however, this argument becomes question-begging.

If Defendants did not assert that their purpose in obtaining the KLM Report was one enumerated in the FCRA, then the fact that KLM functioned as a mere conduit without an independent purpose for collecting the information in the Report implies that the Report, if it was not in fact used for an authorized purpose, was not a consumer report. In that case, there would have been no legal requirement that Defendants assert "a purpose for which [a] consumer report is authorized to be furnished under [§ 1681b]," 15 U.S.C.S. § 1681b(f), in order for their purpose in acquiring the KLM Report to have been legally permissible. Therefore, the allegation that Defendants asserted their acquisition of the Report to be for a permissible purpose, properly understood, does not suffice to establish that the KLM Report was expected to be used for a purpose enumerated in the FCRA and was thus a credit report capable of giving rise to liability under § 1681b(f).[6]

Admittedly, in the paragraph of the Complaint following the general allegation that "the defendants expressly or impliedly advised KLM that they had a 'permissible purpose' for [obtaining the second portion of the KLM Report]" (Compl. ¶ 15), Plaintiff does allege that "the defendants accessed, obtained and used such information without having a permissible purpose for doing so, as required by 15 U.S.C. § 1681b and [N.Y.] GBL § 380-b." (Compl. ¶ 16.)

---

[6] The letter from KLM attached as Exhibit A to Defendants' Reply Affirmation, which appears to indicate that KLM did not believe the KLM Report to be a consumer report and thus implies that KLM probably did not expect the Report to be used for a purpose enumerated in the FCRA, is not properly before the Court on a Rule 12(b)(6) motion and is not considered here.

Plaintiff also alleges later in the Complaint that Defendants "violated 15 U.S.C. § 1681b by [negligently or willfully] obtaining a consumer report pertaining to the plaintiff without a permissible purpose." (Compl. ¶¶ 25, 29.) But to get from this use of the same undefined phrase in multiple paragraphs of the Complaint, to the conclusion that KLM is alleged to have specifically expected the Report to be used for an authorized purpose enumerated in the FCRA, one must pile inference on top of tenuous inference to an unreasonable degree. The Supreme Court has recently reminded us that while "the Federal Rules of Civil Procedure require only 'a short and plain statement of the claim showing that the pleader is entitled to relief'... the 'short and plain statement' must provide the defendant with 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Dura Pharmaceuticals, Inc. v. Broudo, No. 03-932, slip op. at 9 (U.S. Apr. 19, 2005) (quoting Fed. R. Civ. P. 8(a)(2) and Conley v. Gibson, 355 U.S. 41, 47 (1957)). The Complaint in this case does not provide sufficiently clear notice that the ground upon which Plaintiff's § 1681b claims rest is an alleged specific expectation by KLM that the KLM Report would be used for a purpose explicitly authorized in the FCRA.

### c. General Allegation of Consumer Report Status

The Complaint does allege that "the 'activity' section of the report [obtained by Defendants from KLM] is a 'consumer report' as that term is defined by 15 U[.]S[.]C[.] § 1681a(d)." (Compl. ¶ 14.) The Second Circuit has cautioned, however, that "bald assertions and conclusions of law will not suffice" to survive a Rule 12(b)(6) motion. Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996). Plaintiff's bald assertion that some portion of the KLM Report was "a 'consumer report' as that term is defined by 15 U[.]S[.]C[.] § 1681a(d)" (Compl. ¶ 14) is insufficient to establish, even for purposes of this motion, that the KLM Report actually was a consumer report capable of giving rise to a § 1681b(f)(1) claim.

## 2. Defendants' Authorized Purpose for Obtaining and Using the Report

Assuming *arguendo* that the KLM Report or some portion of it was in fact a "consumer report" in a sense capable of giving rise to a § 1681b(f)(1) claim, the use to which the KLM Report was put by the Defendants would be permissible under 15 U.S.C. § 1681b(a)(3)(D). That subsection allows a consumer report to be furnished to a person who "intends to use the information in connection with a determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider an applicant's financial responsibility or status." 15 U.S.C.S. § 1681b(a)(3)(D) (2005).

Defendants' acquisition and use of the KLM Report fits within the plain text of this statutory description: they "use[d] the information in connection with a determination of the consumer's eligibility for a... benefit granted by a governmental instrumentality required by law to consider an applicant's... status." Plaintiff claimed in the holdover proceeding before Housing Part F of the Civil Court of the City of New York that he was "entitled to Rent Stabilization protection." (Def. Notice of Mot., Ex. C, Manso Aff. at ¶ 9.) Rent Stabilization protection can quite naturally be described as a "benefit," and the Housing Part of the Civil Court of the City of New York is a "governmental instrumentality" that was required to consider Plaintiff's "status" to determine whether he was eligible to continue to be granted that benefit. The Housing Court litigation can therefore be characterized as "a determination of the consumer's eligibility for a... benefit granted by a governmental instrumentality required by law to consider an applicant's... status," 15 U.S.C.S. § 1681b(a)(3)(D).

The test of 15 U.S.C. § 1681b(a)(3)(D) thus reduces here to the same test as was applicable under the relevant portion of 18 U.S.C. § 2721(b)(4), the litigation exception to the DPPA: Defendants' actions were permissible if they used the information in the KLM Report

"in connection with" the Housing Court litigation.  As previously explained, see supra Part III, the *only* purpose for which Defendants are alleged to have obtained and used the KLM Report qualifies as a use "in connection with" the Housing Court litigation.  Thus, even on the assumption that the KLM Report or some portion of it was indeed a consumer report, Plaintiff does not state a claim under § 1681b because his allegations imply that "the consumer report [wa]s obtained for a purpose for which the consumer report is authorized to be furnished under [§ 1681b]," 15 U.S.C.S. § 1681b(f)(1).

There is little case law applying § 1681b(a)(3)(D), and none indicates definitively that this textual approach to interpretation of it is erroneous.  Ali v. Vikar Management appears to come closest to doing so: the Court there declared, in finding a landlord who had requested a credit report on a rent-stabilized tenant to have violated the FCRA, that "subsection [(D)] has no applicability to this case and defendants' reliance on it is completely misplaced."  994 F. Supp. at 500.  In Ali, however, there was no litigation underway at the time of the landlord's request that could have been characterized as "a determination of the consumer's eligibility for a... benefit granted by a governmental instrumentality required by law to consider an applicant's... status," § 1681b(a)(3)(D).  A holdover petition was eventually brought against the tenant whose credit report had been accessed, but this occurred more then ten and a half months later.  See 994 F. Supp. at 495-96.

Section 1681b(a)(3)(D) does not include a provision analogous to that in 18 U.S.C. § 2721(b)(4) allowing use of information during "investigation in anticipation of litigation"—there is no authorization to acquire a consumer report for *investigation in anticipation of* "a determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider an applicant's financial responsibility or status."  Given the absence of such a provision, there is a significant distinction between

obtaining a consumer report when the "determination" referred to by § 1681b(a)(3)(D) is already underway and in order to refute a contention made by the "applicant," as is alleged to have been done in this case, and obtaining a consumer report when no such determination is underway and none is even commenced for more than ten months thereafter. To the extent that <u>Ali</u> may suggest that § 1681b(a)(3)(D) would be inapplicable to acquisition of a consumer report in the former situation as well as the latter, we will not follow it.

The FTC Commentary on the FCRA states that "[a]ny party charged by law (including a rule or regulation having the force of law) with responsibility for assessing the consumer's eligibility for the benefit (not only the agency directly responsible for administering the benefit) has a permissible purpose to receive a consumer report," 16 C.F.R. 600 App. at § 604(3)(D)(1) (2005), but also contends that "[p]arties not charged with the responsibility of determining a consumer's eligibility for a license or other benefit, for example, a party competing for an FCC radio station construction permit, would not have a permissible purpose to obtain a consumer report on that consumer," 16 C.F.R. 600 App. at § 604(3)(D)(2). Where the "governmental instrumentality" charged with responsibility for assessing eligibility for the benefit in question is a court, however, it is problematic to distinguish between reception of a consumer report by the court itself, and reception of the consumer report by a party who wishes only to deliver it to the court. In our legal system, courts do not go out and obtain evidence on their own; it is brought to them by parties. Thus, where the sole alleged purpose for the acquisition of a consumer report is its delivery to the responsible court, the logic of the FTC Commentary does not imply that the acquisition should be deemed impermissible simply because a litigating party is involved.[7]

---

[7] The FTC Commentary "does not have the force or effect of regulations or statutory provisions," 16 C.F.R. 600 App. at ¶ 1. It is at most entitled to "respect according to its persuasiveness" under <u>United States v. Mead</u>, 533 U.S. 218, 221 (2001), and <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134 (1944), and thus need not be followed beyond the point at which its logic would cease to be persuasive.

Neither Ali nor the FTC Commentary provide sufficient reason to depart from the result indicated by the text of § 1681b(a)(3)(D). "Statutory construction begins with the plain text and, if that text is unambiguous, it usually ends there as well." United States v. Gayle, 342 F.3d 89, 92 (2d Cir. 2003); accord BedRoc Ltd., LLC v. U.S., 541 U.S. 176, 183 (2004) ("The preeminent canon of statutory interpretation requires us to presume that [the] legislature says in a statute what it means and means in a statute what it says there. Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous.") (citation omitted). According to the plain text of § 1681b(a)(3)(D), the KLM Report is alleged to have been "obtained for a purpose for which [a] consumer report is authorized to be furnished," 15 U.S.C.S. § 1681b(f)(1).

One could perhaps argue that the text of § 1681b(a)(3)(D) is ambiguous, but only by following a line of reasoning that would also lead to the conclusion that the KLM Report was not a "consumer report" at all and therefore could permissibly be used for a purpose not enumerated in § 1681b. The reference in § 1681b(a)(3)(D) to "a governmental instrumentality required by law to consider an applicant's financial responsibility or status" could be construed as referring to a government instrumentality required by law to consider an applicant's financial responsibility or *financial* status—that is, "financial" could be considered to modify both "responsibility" and "status." This construction, however, could not reasonably coexist with the broad interpretation of the term "personal characteristics" in 15 U.S.C. § 1681a(d)(1) that is necessary in order for Plaintiff's driver record to be considered a consumer report. Combining a narrow interpretation of § 1681b(a)(3)(D) with a broad interpretation of § 1681a(d)(1) would lead to absurd results.

If only information that in some sense bears on one's ability to repay debts is covered by the FCRA's restrictions, then it could make sense to limit even official use of FCRA-covered information to cases in which an evaluation of financially-related status is required. If a broad range of personal information including one's driving record is covered, however, then the

FCRA cannot be meant to forbid a governmental instrumentality from having access to such information in the course of determining an applicant's eligibility for a license or benefit, simply because the aspect of the applicant's "status" that is relevant to that determination is not a financial one. Otherwise, a state DMV could violate the FCRA by obtaining the driving record of an applicant from another state who wanted a license to operate dangerous commercial vehicles. That is not a result that Congress is likely to have intended.

To the extent that § 1681b(a)(3)(D), like § 1681a(d)(1), is ambiguous, this case is controlled by two well-established canons of statutory interpretation: the rule that "when determining which reasonable meaning should prevail, the text should be placed in the context of the entire statutory structure," Natural Resources Defense Council, Inc. v. Muszynski, 268 F.3d 91 (2d Cir. 2001), and the rule that "absurd results are to be avoided and internal inconsistencies in the statute must be dealt with," id. (quoting United States v. Turkette, 452 U.S. 576, 580 (1981)). Avoiding absurd results in the context of the entire statutory structure requires that Plaintiff cannot simultaneously prevail on both the question of how § 1681a(d)(1) should be interpreted and the question of how § 1681b(a)(3)(D) should be interpreted. If the coverage of the FCRA is construed broadly, the KLM Report is a consumer report under § 1681a(d)(1), but Defendants' alleged use of the KLM Report is an authorized purpose under § 1681b(a)(3)(D). If the coverage of the FCRA is interpreted narrowly, so as to limit § 1681b(a)(3)(D) to applications with respect to which a consumer's *financial* status must be considered, then driver records such as Plaintiff's must be outside the scope of § 1681a(d)(1), with the result that the KLM Report was not a consumer report at all. Either way, both of Plaintiff's claims under § 1681b must be dismissed.

**B. 15 U.S.C. § 1681q**

Although 15 U.S.C. § 1681q is a criminal prohibition that does not explicitly grant a private right of action, Plaintiff may nevertheless bring suit for an alleged violation of it under the private right of action contained in § 1681n. Northrop v. Hoffman of Simsbury, 134 F.3d 41 (2d Cir. 1997). Section 1681q is violated by "[a]ny person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses," 15 U.S.C.S. § 1681q (2005). However, despite alleging in the Complaint that "in accessing such information, the defendants acted knowingly and willfully and under false pretenses" (Compl. ¶ 17), Plaintiff has not stated a claim for violation of § 1681q under Second Circuit precedent.

The Second Circuit has held that "[a] person cannot obtain information to which he has a right under false pretenses." Scott v. Real Estate Fin. Group, 183 F.3d 97, 100 (2d Cir. 1999). Even if the Defendants had made false statements to KLM during the process of acquiring the KLM Report, they would be protected by the rule that "a report requester does not violate Section 1681q by giving a false reason for its request if it has an independent legitimate basis for requesting the report." Scott, 183 F.3d at 99. As discussed above, Defendants had at least one independent legitimate basis for requesting the KLM Report, and likely two: they were entitled to it under 18 U.S.C. § 2721(b)(4), see supra Part III, and also entitled to it under 15 U.S.C. § 1681b(a)(3)(D) unless it was not a consumer report at all, see supra Part IV.A.2. Scott therefore prevents Plaintiff from stating a claim under § 1681q.


**V. Claims Under New York Fair Credit Reporting Act**

In their motion papers, Defendants have not addressed the merits of Plaintiff's NYCRA claims. Rather, they have stated simply that because no federal statutes are properly involved in

this case, the state-law claims must be dismissed for lack of federal jurisdiction.[8] It is not strictly true that the Court inevitably lacks supplemental jurisdiction over the state-law claims once the federal claims are dismissed under Rule 12(b)(6), as a dismissal pursuant to that Rule does not implicate the Court's original subject matter jurisdiction over the federal claims. However, having "dismissed all claims over which it has original jurisdiction," 28 U.S.C.S. § 1367(c)(3) (2005), and having done so well in advance of trial, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims. See Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

## VI. Conclusion

For the reasons stated above, Defendants' motion to dismiss the Complaint is GRANTED. Plaintiff's claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., and the Driver's Privacy Protection Act, 18 U.S.C. § 2721 et seq., are DISMISSED. The Court declines to exercise jurisdiction over the remaining state-law claims, which are DISMISSED without prejudice. The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: New York, New York
April 26, 2005

_____
U.S.D.J.

---

[8] This argument was first made clearly in Defendants' Reply, but the logic behind the usual rule against considering arguments made for the first time in reply briefs does not apply when the party against whom the argument is made submits two subsequent sur-reply letter briefs after oral argument, as Plaintiff did in this case. In any event, issues pertaining to the Court's subject-matter jurisdiction must be addressed even if not raised by the parties.